And that's only a recording device. It is not a microphone. So please keep your voices up so that we can all hear you in competition with the traffic and the weather. Certainly. Good morning, Your Honors. My name is Yasmin Navai, and I represent the defendant, George Cabot, on behalf of the State Appellate Defender's Office. May it please the Court. In terms of roadmap, Your Honors, I'm going to be focusing on Issue 1 regarding the deprivation of Mr. Cabot's right to a fair and impartial jury because the jury was not full S.U. gang bias. May I just ask you a question? When you say full, are you saying voir dire? Correct. This error, Your Honors, was caused by two independent sources. First, by the prosecutor's pre-trial representation or pre-jury selection representation that gang evidence would be minimal when in fact this was not to be the case. But also later by trial counsel who failed to reopen voir dire once the full extent of the gang evidence and the fact that gang evidence would be the central feature of the State's case. Your Honors, this was a serious error which deprived Mr. Cabot of the opportunity to make intelligent uses of his challenges for cause and his peremptory challenges. Because gang evidence ultimately pervaded the State's case, Mr. Cabot was prejudiced, beginning first with the prosecutor's pre-trial representation. Can I just stop you for a second? Certainly. The prosecutor told the judge that there would be evidence regarding gang affiliation, correct? There is a motion filed by defense counsel, pre-trial. I'm not asking that. I'm saying when the issue arose, wasn't the judge informed that the State would elicit evidence regarding gang affiliation, just that one verse? No. Actually at the pre-trial hearing, there was a motion, let me clarify, a motion requesting to exclude any evidence of defendant's pre-trial gang affiliation. But at the hearing, which was conducted two weeks later, the prosecutor represented affirmatively that they would not be introducing evidence of defendant's gang affiliation. I just said the defendants. They said they were going to be introducing evidence of gang affiliation. The only evidence that the prosecutor said they would be introducing would be evidence in the form of one witness who would testify that Mr. Cabot allegedly asked them, quote unquote, who you is, referring to their gang affiliation. I'm referring to the record. When the State is asked about what they will elicit, that the State says, from our point of view, and this is a quote out of the record, from our point of view, the gang information is that the defendant or defendants ask the witnesses about gang affiliation. In other words, they say gang slogans, and at least one of the witnesses will testify. He said, I'm not about that. I'm just looking for a dog. And then the State said, so it's very minimal. But they said there was going to be evidence regarding gang affiliation, gang slogans, and this particular witness asking about what they were about. That was all in one context of one witness. They said, you're right, Your Honor, that they said. No, they didn't say one witness. They did not, they never said that was from one witness. You can go on, but that is clearly not what the State represented. My reading of the record is that there would be one limited question, which is what all the parties believe, that it would be one question as to the witnesses' gang affiliation. Well, then how do you explain the judge's comments later when the judge says, anything that's said during the course of the event, and of course I'm paraphrasing, but anything that's said during the course of the incident, of course that is admissible. Anything that's said regarding gangs during the offense itself is admissible. My understanding is, Your Honor, that the court actually at that point said that comment would be admissible because it was during the course of the event. The court says whatever comes up in the evidence as what he said, that's part of the evidence. It can't be stricken out in any fashion, all right? I mean, that's pretty broad. Well, the representation, of course, is that it's minimal and that it would be limited to that one question. That's the representation. I don't see that, Counsel. Where do you see the one question? I believe it's in the facts. I think I'm directing that the discussion itself went through Report of Proceedings S15, I believe, through S18. What it is is during the conversation after the court has said, or the state has represented that there's going to be gang affiliation, gang slogan, and this one witness who was asked a question. And the court misstated what was said because the court says the one question I mentioned earlier as a question to the defense attorney in asking if the defense attorney said he wanted further voir dire. And then the court talks about their philosophy of asking or not asking the question. It's the court's statement that it's one question, but the state has never represented that it was one. And then the court does make, as Justice Hall said, this broad statement that anything, whatever comes up in the evidence as to what was said, that's part of the evidence. It can't be stricken out in any fashion. But the fact is that the prosecutor makes the representation that it is minimal. And, in fact, when there is this statement that it would be limited to one question, the prosecutor never clarifies and says, no, in fact, we're going to be having much more evidence. No, the court does. The court, right after, the court says it's one question. Then the court goes on and the court is the one that says whatever comes up. I don't need to say it again, but the court then broadens what goes in. Anything that is said as part of the evidence can't be stricken in any fashion. It occurred to me that Judge Sachs was just generally characterizing what the state's position was going to be, possibly inaccurately. But doesn't Justice Lampkin make a point that his commentary thereafter cured, if you will, any possible misapprehension that may have attended to the fact that the defense counsel had to go on at that time and, in fact, her decision to forego strain questioning at that time prior to jury selection was explicitly stated because it was based on the limited and, quote, unquote, minimal amount of evidence. I hate to stop you again, but the state said it was minimal. But then they also said in that same statement that the minimal evidence would include gang affiliation, gang slogans, and at least one witness who will testify about saying I'm not about that. Correct, but what ultimately the prosecutor came to the defense counsel and informed her of was that there was no evidence of gang affiliation. And that was quite a bit more than the representation prior to trial, and that was Again, you say it's quite a bit more. What did the defense lawyer say? The defense lawyer said that the state has said to us that they're, quote, going to go a little further, unquote. So the defense attorney thought it was a little bit more that the state was attempting to introduce that they were objecting to. Let's take the prosecutor's words at that point. She explained, she confirmed that, in fact, there would be No, no, I was talking about the defense. The defense is the one who brought it up. She objects. She does object. But she, Ms. Robinson, is the one who characterizes it as a little further that the state wants to go than what they had initially told us. But in actuality, what is discussed at that point is that there would be evidence contrary to the representation before relating to the fact of defendant's gang affiliation. I.e., there would be an officer who would testify that Mr. Cabot was a Latin King member. In addition to this, the prosecutor at this time indicates for the parties that both Mr. Rea and Chavez, the eyewitnesses in this case, would testify that they are members of the rival or former rivals of the maniac Latin disciples. And how could that possibly hurt the defendant that the state's witnesses are gang members? They are not gang members, actually. It's former gang members, so there is an emphasis on, there is a big divide between Former as in when? At the time of the incident or at the time of trial? At the time of the incident, they were not gang members. And in fact, there was testimony that eventually it was introduced at trial that Mr. Rea indicated that he was not a gang member. And so that came out in testimony, that they were former gang members. I'm saying, was there a time put on when they said they were former, as in former at the time of the trial or former prior to the incident? I believe Mr. Chavez goes into the fact that he was arrested and then turned his back on that lifestyle, and that occurred prior to trial, and Mr. Rea also testified. That was in 2004, which was after the incident. No, I believe, no, that's not my understanding. But I do know that Mr. Rea has testified at trial that he told them that he was no longer, he was not a gang member and he pleaded for his life at that point. He didn't say he wasn't a gang member, he's telling somebody who's trying to shoot him that he's not a gang member. Sure, I understand. But I think the evidence was introduced that they were no longer gang members at the time of the incident as well. But at any rate, so there is a divide, a big divide between the state's witnesses who had turned their backs on this lifestyle and the defendant who allegedly was still carrying on with this destructive lifestyle. They also, the prosecutor at that point indicated that there would be testimony that Mr. Chavez said, quote, unquote, maniac love, quote, unquote. Isn't that part of the gang slogan? Yes, that is. All right, so then the defense lawyer knew that when she forgo the voir dire of the jury regarding gang violence. There was no indication that she knew that that testimony would be coming out, and in fact, there is no claim that she knew that this gang slogan or gang affiliation conversation wasn't given to the defense prior to trial. No, there's no indication as to that. And ultimately, Your Honors, that comes to the fact that we have, the buck stops at a trial counsel's door. Because whether she knew of the gang affiliation, it seems, well, she states on the record that she was foregoing gang violence during this questioning of the voir dire, during voir dire of the veneer, based upon her belief or the representation of prosecutor that the evidence, gang evidence, would be minimal. By the time that trial is about to begin or before it's about to begin, trial counsel is well aware of the evidence that's going to come in. So ultimately, the buck stops with defense counsel, who failed at that point to request that the court reopen voir dire so that the jury could be polled on gang bias on this very important issue. And it is Mr. Cabot's position that such a failure cannot be countenanced under the guise of sound strategy. It simply is not sound, knowing that gang evidence is going to be permeated throughout the state's case. Well, I hate to interrupt you, but prior to, well, I won't say prior to, at the time that the defense was informed that the testimony, as the defense lawyer says, was going to go a little further, the defense lawyer was aware that maniac love was going to be said, that king love was going to be said after Mr. Hernandez was shot, that someone was asked about what they were about. So the only really new evidence at this time is that the defendant said to a police officer that he was a Latin king, and the testimony regarding the state's witnesses being the rival gang and the territory that was there. And that was covered by the gang, and it was by the defense gang. There is, Your Honor, there was a general statement, you're right, about gang slogans. We do not know if defense counsel knew that, quote, unquote, maniac love or Latin king love or king love would be coming out, those slogans in particular. But nonetheless, oh, and of course, there is Officer Ramos' testimony, which was given over defense counsel's objection, which went in detail, not just about the particular gangs at issue here, the maniac Latin disciples and the Latin kings, but really their placement in the overall, the umbrella, their placement under the folks and the people, larger street gangs. So this was all very new, and of course, importantly, defense counsel did not know that there would be any evidence of defendant's gang affiliation, because the prosecutor said that that would not be in. But again, ultimately, the buck stops at defense counsel's door, who failed to reopen Bordeaux, could have resolved this issue in a case where gang evidence would be pervasive. Your Honor, Mr. Cabot was prejudiced by this failure as well. And counsel, what makes you think that this was not trial strategy? Trial strategy, as defense counsel herself indicated on the record, previous to the motion in limine, that if there was only gang evidence that was going to be one question, then she would forego gang screen-based questioning, so as not to attract the jury's attention to that issue. Now, having the knowledge of all of the gang evidence that was going to come in, from not one, but four separate witnesses, and again, about the folks and the people, this larger testimony, even if it was a matter of strategy, Mr. Cabot's position is that it's one sound strategy, which is not protected. This Court has routinely held that only sound strategy is protected. And hasn't this Court also held that when state witnesses and defense witnesses both are in gangs, that it is or can very well be strong, a great trial strategy, actually, because the defense can argue that the state's witnesses basically are just as bad as the state's witnesses, and that's a worthy belief. And in this case, there's really more gang evidence against the state's witnesses than the defendant. Your Honor, I do, I'm familiar with those cases that hold when there's both sides are gang-related. It is our position that regardless, when gang evidence is permeating, whether it be from the state side or the defense side, it's it may prevent a jury who are afraid of gangs, who have bias against gangs, from being fair. But in this case, we have a divide. We have a divide, actually. It's different than those cases that you referenced, because the state is representing the defendant's, or the state's witnesses as being former gang members, and the defendant still carrying on that destructive lifestyle. But the defense is not. The defense is representing them as current gang members who are just trying to misidentify another gang member, basically because they don't care what maniac Latin king is killed just so a Latin king is accused of this crime. And the defense spends quite a bit of time in their argument talking about the state's witnesses, those terrible maniac Latin disciples. Your Honor, at that point, defense counsel's objections to the gang evidence had been overruled. A considerable amount of gang evidence had been introduced, so defense counsel's strategy was then to basically attack the credibility of the state's witnesses, which is a reasonable theory, whether they're former maniac Latin disciples or currently maniac Latin disciples. But this was, of course, after, over her objection, gang evidence had been admitted. And so if I may interject, I'm not sure you answered Justice Hall's question about strategy. Let's assume for a moment that it was her call, and that it was trial strategy. Why was it unsound strategy, given the line of cases to which Justice Hall referred? And why was it unsound strategy, given the line of cases to which Justice Lampkin made reference, if you'd be so kind? Certainly. The reason that it would be unsound strategy is we're not dealing with one question where perhaps a defense counsel might say... Given the line of cases to which she made reference. Certainly. Those line of cases, those line of cases where there's equal evidence of gang affiliation on both sides. We in this case have a divide between the state's witnesses who are no longer gang members, have turned their backs on this lifestyle, have testified that they're moving on, working and such, and the defendant who's still carrying on in this lifestyle. If we're talking about defense counsel and defense witnesses, that would be our position, but in addition to that, to differentiate from those cases, I think what you have to look at is that we have state's witnesses who have turned their backs on that lifestyle, have moved away, and we have defense witnesses who are still allegedly engaging in that lifestyle. Are you saying that the cases that Justice Lampkin referenced, that those, that both sides were still currently affiliated with gang affiliation, that's my understanding, that's my understanding of those cases? That's the distinction that you're making between the facts of your case and the cases that she's referenced. Certainly. And the other distinction I think I'd have to go back and look at those cases, but we have a pervasive amount of gang evidence which is admitted. Again, we have evidence not only of defendant's gang affiliation, of the rivalry between the state's witnesses' former gang and the defendant's gang, we have territory explanation of how the Maniac Latin Disciples rule that territory, we have evidence, as your honors have referenced, gang slogans that were used, we have evidence in the form of Officer Ramos' extensive testimony about the folks and the people, and if there was any doubt, your honors, about the importance of closing arguments when she instructed the jury that the case was about King Love. There were multiple, and that was a reference to the gang slogan, King Love Bitches, or to defendant's gang affiliation. Your honors, if there's no further question, we would ask that Mr. Cabot, for all the reasons advanced in the briefs and during oral argument today. There's no evidence that the defense relied on it until closing argument, I'm sorry, when at that point having all this gang evidence which she objected to had been admitted already, she had no choice but to use it, and she used it to discredit the defendant's motives in testifying the way that they did. Therefore, Mr. Cabot respectfully requests that this Court reverse his convictions and remand for a new trial. Thank you. Good morning, may it please the Court, Libita Popovich on behalf of the people. Counsel, speak up please. Certainly, Libita Popovich on behalf of the people. In this case, what happened, what this case reduces itself to is really an argument regarding semantics that we are now viewing with analytical hindsight. A certain sequence of events happened, and now as we look in the record, I can see how it can be misconstrued, but when you look at the entirety of the record and the totality of the circumstances of the judge's comments, of the prosecutor's comments, and of the defense attorney's knowledge, when you look at all of that cumulatively, it shows that the correct amount of gang evidence was produced in the trial, that the trial judge did limit certain evidence, and that the defense was certainly on notice that certain gang evidence would be coming in. But didn't the State lead the defense counsel to believe that there was going to be very, very limited gang testimony, in fact, only one question? Right. It is a little bit misleading in the record, admittedly so, kind of unclear what the prosecutor initially said. What she initially said was that there would be, that evidence, some gang evidence would be presented, and then she mistakenly said that it would be very minimal, and then came back at pretrial, before the trial actually occurred, and explained that they would be calling, that the State would be calling the police officer to testify as to the defendant's gang affiliation. No, let me stop you, because you're misstating what your own State's attorney said. Your State's attorney said, when she was asked, and I'm saying she, I don't know if it was she, but she said, when she's asked about gang evidence, she says, from our point of view, the gang information is that the defendant or defendants asked the witnesses about gang affiliations. In other words, they say gang slogans, and at least one witness, one of our witnesses would testify, he said, I'm not about that, I'm just looking for a dog, so it's very minimal. She said all of that. I mean, she characterized all of that, gang slogans, gang affiliation, and the testimony of that other witness as minimal. So she didn't say one question. But counsel today. I'm sorry. I was in the middle of the statement. Let me just get that out. It was the judge who said it was one question. Right, and to that extent, that's why I said it is a sequence of events, and as Justice Patti pointed out, the judge mischaracterized that evidence. Counsel, are you today, I understood you to say that there was, you admit that the record was unclear, and that the evidence was unclear, that what the state said was misleading, that they did represent that there was going to be minimal evidence. I think that's what the, how, so how is your representation in this courtroom today at variance with what was, if at all, with what was said in the record? Well, I'm acknowledging that in the record what was initially said was the judge said, is there any evidence in this case from your viewpoint that this involved gang stuff? And the prosecutor says, yes. That's our record, S14. And then as Justice Lampkin pointed out, the state's attorney goes ahead and explains, we are going to offer gang affiliation, we are going to talk about gang slogans, and then she adds that additional sentence, it is very minimal, and that's S14 through 15. Then the trial court comes in and gives a comment and characterizes this evidence as being minimal, and that only one aspect is going to be coming out. I'm acknowledging that from the record with some of the terminology that has been used, it seems like it would be unclear, but when you look at the totality of the record, it's clear that gang affiliation. It is clear that defense counsel is confused then about what the prosecutor represented. There's no record that the defense counsel is confused. They certainly think that there is only one question going to be asked. Ms. Robinson states, Your Honor, I would just, I think that would be fine if that's the only question they're going to ask. That's the understanding of defense counsel. Well, the trial judge asks defense counsel if she wants the judge to ask any additional questions, and that is the preceding this entire commentary that the judge talks about in terms of strain factors and questions that the judge would be more than willing to ask if the defense counsel wanted to. It's not that defense counsel was unclear that gang slogans and gang affiliation would be part of this record. Those are the things that gave motive in this case and would certainly be coming in, and it's absolutely proper that it comes in for that purpose. To that extent, it's difficult to show under a Strickland standard that any prejudice resulted in this case. First, it was absolutely not objectively unreasonable that the defense counsel at that point would make the strategic decision not to ask additional questions. This was a gang territory. There were several different gangs. There were the rival gangs of the people and the folks and the Latin disciples. It's a very strategic defense strategy that they wouldn't go into that anymore. That's as to the first problem, and as to the second problem in Strickland, it's very difficult to show that there was any prejudice. We have one of the witnesses who was beaten about the head and identified the defendant that night from a photo array. We have two additional witnesses who identified the defendant from a lineup several days later. We have a multitude of evidence in this case that this was a completely unprovoked crime, which the motive related back to some type of gang rivalry. And to that extent, it was properly used. It's very difficult to conceive that defense counsel didn't understand this. In fact, defense counsel made the strategic decision in closing arguments to point out that the state's witnesses were two maniac Latin disciples. So that was a strategic decision that was made. I think the comment that gang information was used is very important. So as to the Strickland standard, it's certainly not objectively unreasonable, and there is no prejudice in this case as far as the defense is concerned. There was some mischaracterizations as to terminology initially, but if you look at the entire record in its sequence, it's clear that defense counsel was put on notice, both by the judge and by the prosecutor in this case, that gang affiliation would come into play. Actually, after the state makes their initial statement about gang slogans and gang affiliation and this one witness being asked about a gang, and the judge characterizes it as one statement, then there's another discussion about whether the defense lawyer wants the voir dire of the jury. And then the last thing the judge says, besides that one question, is whether the judge is willing to give that one question, is that anything that came out, and I've already said it, anything that came out during the course of this incident, any statements that are made during the course of the incident, are of course admissible and can't be stricken. So the judge did not limit it to that one question. That's all before voir dire. Right. That was also an indication to the defense attorney, as the judge was explaining that he would be more than willing to give these instructions. He was explaining, almost kind of cautioning the defense attorney, you know, if this does happen, if this does come in, then this is part of the evidence. Judge Satz went through an entire litany of strain factors that he would be more than willing to give to the jury, to the potential jurors, if the defense counsel wanted. That also supports the state's position that defense counsel was on notice and made a strategic decision not to pursue that line of questioning. And it made sense in this case, given the type of evidence that was being brought into the case and the witnesses that the people were presenting. If there are no further questions, the people rest on the arguments in their brief, and we ask that the court affirm the trial judge's determination and the defendant's sentence and conviction. Thank you. Brief rebuttal? Very briefly, I'd like to return to Judge Lampkin's comment about the trial judge, Judge Satz, not limiting the amount of gang evidence that would be coming in. While there might not have been a limitation, at that point, because the prosecutor never clarified when defense counsel indicated that there would only be one question, that, remember, the prosecutor doesn't make any clarification. At that point, does the prosecutor ever say there's only going to be one question? You keep saying the prosecutor says that. You need to show me that in the record, because I have not seen the prosecutor that I can find in the record that she says she doesn't clarify the misrepresentation by the State's attorney when she says, and the court, when they're all saying if it's one limited question. And it was my understanding that it was one question related to that witness's gang affiliation. But at any rate, the court Did she answer her question? Did you answer her question? I thought I did. I said the prosecutor never I'm confused by your answer. Well, I'm sorry. The prosecutor never indicated that there would be one question. Well, it seems to me that that was the import of the statement. But even if it wasn't, at the very least, once the trial court and once the State's attorney are indicating that it's one question, the prosecutor never clarifies. That was simply my point. Bottom line, though, Your Honors, whether it be because of a representation prior to trial. So the prosecutor had, I'm sorry, had a duty to clarify? Certainly, if that was not, if that was a misrepresentation, arguably the State's attorney had a duty to clarify. If it was going to be, if given the amount of evidence that was coming in, certainly, that would be Mr. Gabbard's position. So you're saying that the prosecutor made a statement, both defense counsel and the judge thought that they were limiting the gang information to one question, and that the prosecutor did not come back. And that the judge left behind both of them and clarified that that was not what she originally meant? Correct. Correct, Your Honor. So bottom line, what we are dealing with today is the denial of Mr. Cabot's right to a fair and impartial jury. And whether that be from the prosecutor's misrepresentations initially or confusion at any rate, or from ineffective assistance of counsel, which bottom line, defense counsel could have reopened Vaudeer and didn't. Mr. Cabot's right to a fair and impartial jury is what we're dealing with today. And that's why the trial was prejudiced. Defense counsel makes, I'm sorry, the prosecutor makes much of the factor of strategy in closing arguments. As I pointed out in my argument, that strategy was after all of the objections to the gang evidence had been overruled. At that point, defense counsel had no choice but to attack the credibility of the State's witnesses. And as far as prejudice goes, the overwhelming nature of the gang evidence that was introduced, and the fact that we do not know whether anything about these jurors being unbiased, deprived Mr. Cabot of a right to a fair and impartial jury. And again, I'd like to point out, there was no inculpatory statement. There was no physical evidence which tied him to this case. In a case where there was this much gang evidence, and in light of these facts, Mr. Cabot was acquitted. It was prejudice. Thank you.